COWART, Judge,
dissenting.
This is an appeal by a father from an order permanently terminating his parental rights to his child.
While the father lived in his home state of Alabama, his wife, in a Florida state mental hospital, gave birth on March 2, 1981, to the child in question. H.R.S. im *1231 mediately took custody of the child and the father has tried, unsuccessfully, ever since to obtain custody of his daughter from H.R.S. During the first three years, the father made trips from Alabama to Florida, wrote at least three letters and made twenty-three telephone calls, attempting to obtain custody from H.R.S. In July, 1984, the father moved to Florida and commenced visiting with the child as often as permitted by H.R.S. and the juvenile judge, first monthly, then weekly, until the final hearing on August 5,1986. H.R.S. filed an amended petition for permanent commitment because the father failed to perform to the satisfaction of the H.R.S. caseworker a performance agreement written by that worker. The petition claimed “abandonment” by the father. At the final hearing the H.R.S. caseworker was asked:
Question: Mrs. Feiler, in all your dealings with Mr. Scott, did you ever get the impression that he wanted to give up his parental right to Regina?
Answer: Absolutely not.
However, the H.R.S. attorney had the H.R.S. caseworker search the H.R.S. file for some period of six months in which the file reflected that the father had made no demand or visit with the child and the period from October 23, 1981 to June 1, 1982 was found in which the father had not written or called or sent a Christmas present to the child. Of course the child was from eight to fifteen months of age during that time and was in a foster home in Florida while the father resided in Alabama. The H.R.S. record was also silent as to the father’s efforts between November 29, 1983 and July 3, 1984, during the time the father was still in Alabama. There was no evidence that H.R.S. requested support money from the father or that he had the financial ability to provide it. The attorney for the father unsuccessfully argued that “abandonment consists of conduct which manifests a settled purpose to permanently forego all parental rights and the shirking of the responsibilities cast by the law of nature so as to relinquish all parental claims to the child.”[1] The H.R.S. attorney successfully argued that failure to perform a performance agreement constituted abandonment. The H.R.S. attorney’s argument was:
... Mr. Scott was given the opportunity to perform under a performance agreement as supposedly the statute dictated and as our Supreme Court dictated. He was given that opportunity. The testimony here established clearly and convincingly that he did not do what he was supposed to. So we have the abandonment. (emphasis supplied)
The father’s attorney replied: “He [the father] may not have complied with the performance agreement but I don’t think that that qualifies as establishing him as having abandoned the child.” As to the two year period from July, 1984 until the final hearing on August 5, 1986, during which the father visited the child as often as permitted by H.R.S. and the juvenile judge, the H.R.S. attorney argued that this did not rehabilitate the father’s “abandonment.” The H.R.S. attorney and the juvenile judge were “real surprised” and “very surprised” that no law could be found “having to do with the parent’s opportunity to rehabilitate an abandonment.”
This is another of many cases where parental rights are being permanently terminated, contrary to the law [2] because the child was at one time (here May 28, 1981) adjudicated to be a dependent child and for failure of the parent to perform to the satisfaction of some H.R.S. caseworker a performance agreement which the caseworker has dictated. This is being done in this case by calling the non-performance “abandonment”. The evidence in this case, that presented by the State as well as that presented by the father, clearly shows whatever the shortcomings and defects in the father, he at no time ever intended to voluntarily relinquish parental rights, many times refusing the suggestions of the H.R.S. caseworker that he sign waivers and consent to his daughter being adopted by others.
*1232 The juvenile court should not be able to ignore two years of intense visitation by the father occurring under the control of the juvenile court and of H.R.S., who had legal custody of the child, and pick some long ago six month period of non-visitation upon which to find an abandonment as that term was defined in section 39.01(1), Florida Statutes (1984). The abandonment must be “at the time of the committment hearing.” See In the Interest of S.N.N., 501 So.2d 37 (Fla. 1st DCA 1986).

. This language is from In Interest of D.A.H., 390 So.2d 379, 381 (Fla. 5th DCA 1980).

. In re; R.W., 481 So.2d 548 (Fla. 5th DCA 1986), affirmed, 495 So.2d 133 (Fla.1986).